UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMIE LEE ARMSTRONG, | No. CV-13-0188-JTR |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

**BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF No. 18, 23.  Attorney Dana C. Madsen represents Jamie Lee Armstrong (Plaintiff); Special Assistant United States Attorney Gerald J. Hill represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge.  ECF No. 7.  After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income (SSI) on July 8, 2010, alleging disability since July 9, 2008, due to "epilepsy, seizures and anxiety."  Tr. 145, 150, 172.  The applications were denied initially and upon reconsideration.  Administrative Law Judge (ALJ) James W. Sherry held a hearing on September 9, 2011, Tr. 44-85, and

ORDER GRANTING DEFENDANT'S MOTION . . . . - 1

issued an unfavorable decision on November 1, 2011, Tr. 21-33.  The Appeals Council denied review on March 25, 2013.  Tr. 1-6.  The ALJ's November 2011 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on May 21, 2013.  ECF No. 1, 5.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was born on February 12, 1966, and was 42 years old on the alleged onset date, July 9, 2008.  Tr. 145, 150.  Plaintiff completed high school and a year and a half of college to become a medical assistant.  Tr. 50.  She testified at the administrative hearing she was divorced; had one minor child, age 17, currently living in California; and resided with her boyfriend in a mobile home in Keller, Washington.  Tr. 50.

Plaintiff indicated she last worked in 2008 as a cardiac medical assistant.  Tr. 51-52.  She testified she stopped working in 2008 because she had emergency gall bladder surgery and was also having seizures.  Tr. 52.  She has also worked managing a deli, waiting tables, answering phones for a cab company, performing in-home health care for an elderly couple, and providing medical assistance at a clinic.  Tr. 52-55.

Plaintiff testified she had experienced seizures for the past seven years.  Tr. 57.  She stated from 2008 until the time of the administrative hearing she had "grand mal seizures" up to three times a week and up to five or six times a month.  Tr. 57.  The seizures typically last from three to five minutes at a time and had lasted as long as 22 minutes.  Tr. 58.  After a seizure, she feels terrible and will remain in bed for up to a week at a time.  Tr. 58.  She indicated the last seizure she experienced was three weeks prior to the administrative hearing.  Tr. 58.

ORDER GRANTING DEFENDANT'S MOTION . . . - 2

Plaintiff testified she has fallen while experiencing seizures, which has resulted in head trauma and an injury to her right shoulder. Tr. 58-59. She stated she recently had surgery on her right shoulder due to the injury. Tr. 59-60. Following the surgery, she still has difficulty lifting her right arm and experiences numbness in her pinky and ring finger on her right hand. Tr. 60-62. She testified she can only write three or four sentences with her right hand before needing to take a break and her shoulder is constantly throbbing. Tr. 62. She also stated her memory is bad. Tr. 69.

Plaintiff testified her balance is off, and, as a result, she will catch her footing and trip. Tr. 63. She indicated she is able to walk across the street from her house and back in one stretch, a distance of less than the length of a football field, but does not like to take long walks because she does not know whether she will have a seizure or fall. Tr. 63-64. She stated she may be able to bend over but does not like to do so because she gets light headed due to low blood pressure. Tr. 64. She has no difficulty with squatting, but testified she has problems with standing for long periods of time because she has fainting spells. Tr. 64. Plaintiff indicated if she stands for more than a few minutes, she feels faint. Tr. 65. She testified she fractured her tailbone and has numbness in her back that affects her ability to sit. Tr. 72. As a result, she can only sit for 10 to 15 minutes before needing to stand. Tr. 72. She also stated she has difficulty with sleep. Tr. 65. The longest she had slept in one stretch in the last seven years was three hours. Tr. 65. She additionally experiences headaches two or three times a week which can last up to 24 hours. Tr. 66, 73. Plaintiff indicated she attended counseling two or three times a month for her anxiety. Tr. 67.

Plaintiff testified that, with respect to household chores, she was able to vacuum with her left arm and do laundry, but did not do much cooking. Tr. 68-69. She stated she helped care for her boyfriend's nine racehorses by providing oats for the horses. Tr. 71. Her boyfriend did the hay. Tr. 71. She also indicated she

ORDER GRANTING DEFENDANT'S MOTION . . . - 3

would ride a 17-year-old horse around her property, but had not ridden since the summer prior to the administrative hearing. Tr. 71, 75. She no longer drives a car because she was told not to drive due to her seizures. Tr. 72.

Plaintiff testified she takes hydrocodone for pain, as needed, and had taken Dilantin for seizures. Tr. 74. She stated she was also taking Soma, a muscle relaxer, at one time, but had been taking more of the drug than she was supposed to take. Tr. 69-70. She indicated she stopped taking the muscle relaxer five months prior to the administrative hearing and had since ceased all medications. Tr. 70, 74.

**ADMINISTRATIVE DECISION**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since July 9, 2008, the alleged onset date. Tr. 23. The ALJ determined, at step two, that Plaintiff had the following severe impairments: seizure disorder; right shoulder degenerative joint disease and calcific tendonitis of the rotator cuff and tear; mild thoracic degenerative disc disease; and anxiety disorder, not otherwise specified. Tr. 23. At step three, the ALJ found Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments. Tr. 25. The ALJ specifically determined Plaintiff did not meet or equal listings 1.02 (major dysfunction of a joint), listing 1.04 (disorders of the spine), listing 11.02 (convulsive epilepsy), and listing 11.03 (non-convulsive epilepsy). Tr. 25.

The ALJ assessed Plaintiff's RFC and determined she could perform less than a full range of light work. Tr. 26. The ALJ determined Plaintiff had the following limitations: she can occasionally lift up to 20 pounds and frequently lift up to ten pounds; she can stand and walk or sit for up to six hours in an eight-hour day; she can occasionally push or pull and occasionally reach overhead with her right upper extremity; she should never climb ladders, ropes or scaffolds; she can frequently climb ramps or stairs, balance, stoop, crouch, kneel and crawl; she must avoid even moderate exposure to hazards such as moving machinery and

unprotected heights; she is capable of performing simple, routine and repetitive tasks involving one to two steps; and she can have only superficial interaction with coworkers and supervisors.  Tr. 26-27.

At step four, the ALJ found Plaintiff was not able to perform her past relevant work as a fast food services manager, waitress, medical assistant, in home caregiver and telephone operator.  Tr. 31.  However, at step five, the ALJ concluded that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the jobs of housekeeper or cleaner, laundry worker and document preparer.  Tr. 31-32.  The ALJ thus determined that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from July 9, 2008, the alleged onset date, through the date of the ALJ's decision, November 1, 2011.  Tr. 32.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the Court set out the standard of review:

A district court's order upholding the Commissioner's denial of benefits is reviewed de novo.  *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner.  *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999).

ORDER GRANTING DEFENDANT'S MOTION . . . - 5

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett,* 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see, Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist

in the national economy which claimant can perform.  *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004).  If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made.  20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

## ISSUES

The question presented is whether substantial evidence exists to support the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred by failing to provide reasons to discount the opinions of her "treating and examining sources" and by providing improper rationale to reject Plaintiff's testimony regarding her symptoms.  ECF No. 18 at 8-10.  Plaintiff additionally provides a brief argument that the ALJ accepted Plaintiff's shoulder injury; therefore, the vocational expert's testimony that a difficulty using her right arm would prevent gainful employment should have been credited to support a finding that Plaintiff was disabled.  ECF No. 18 at 10.

## DISCUSSION

### A.    Medical Source Opinions

Plaintiff first contends the ALJ improperly rejected her "examining physicians' opinions and utterly failed to provide any reason to discount them." ECF No. 18 at 9.  However, as indicated by Defendant, Plaintiff does not identify in her opening brief a specific opinion the ALJ failed to consider or how the ALJ erred in this regard.  ECF No. 23 at 6-7.

The Ninth Circuit has indicated it "will not ordinarily consider matters on appeal that are not specifically and distinctly argued in [an] appellant's opening brief."  *Miller v. Fairchild Indust., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986), *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). "We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim."  *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (citations

omitted).  As indicated by the Ninth Circuit in *Greenwood*, "Judges are not like pigs, hunting for truffles buried in briefs." *Greenwood*, 28 F.3d at 977 (9th Cir. 1994) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam)) (alteration omitted).  Consequently, the Ninth Circuit has refused to address claims that were only "argue[d] in passing," *Brownfield v. City of Yakima*, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010), or that were "bare assertion[s] . . . with no supporting argument," *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1079 n. 26 (9th Cir. 2008).

Plaintiff's opening brief cites evidence of diagnoses and evaluations, which were discussed by the ALJ, without identifying any specific errors in the ALJ's analysis of the evidence.  ECF No. 18 at 5-7.  Plaintiff thereafter asserts generally that the ALJ did not set forth reasons for rejecting Plaintiff's examining physicians' opinions.  ECF No. 18 at 9.

The ALJ discussed the medical opinion evidence before him in detail and rationally applied that opinion evidence in his decision.  Tr. 23-24, 29-31.  Plaintiff has not argued or demonstrated in her opening brief how the ALJ's determination with respect to the medical opinion evidence is erroneous, other than to cite generally to evidence in the record discussed by the ALJ.  Because Plaintiff's contention was not argued with specificity, the Court declines to address the issue. *See Carmickle*, 533 F.3d at 1161.

In Plaintiff's reply brief, Plaintiff asserts for the first time that the opinions of neurologist Timothy W. Powell, M.D., support a finding that she meets the listings at 11.02 and 11.03.  ECF No. 24 at 5.  However, Plaintiff again fails to specifically identify an error the ALJ made with respect to Dr. Powell's opinions.

The ALJ's decision noted Dr. Powell's April 2010 evaluation where Plaintiff reported she had experienced six convulsions that year.  Tr. 24.  The neurological evaluation by Dr. Powell was normal including an intact memory.  Tr. 24, 253-257.  It was Dr. Powell's impression that Plaintiff had partial onset seizures with a

suspected etiology of abusive head trauma.  Tr. 24, 255.  An MRI of the head was ordered as Plaintiff was unaware of whether she had undergone a previous brain MRI.  Tr. 255.  A June 2010 brain MRI scan showed no significant intracranial abnormalities.  Tr. 24, 387.  On February 24, 2011, after a hospital admission for a definitive diagnosis of Plaintiff's history of episodes thought to be seizures, Dr. Powell indicated the video EEG telemetry revealed six clinical events, "all of which were nonepileptic/psychogenic in origin."  Tr. 419-420.  Other than excessive beta frequencies consistent with Plaintiff's usage of benzodiazepines, no abnormalities were seen throughout the study.  Tr. 420.  Dr. Powell diagnosed "[n]onepileptic/psychogenic event" and concluded there was "no evidence to support a diagnosis of seizures."  Tr. 410.

Given Dr. Powell's diagnosis that Plaintiff does not have epilepsy, Plaintiff's reply brief argument that Dr. Powell's opinion supports a finding she meets the listings for epilepsy is without merit.  Nothing in Dr. Powell's reports suggests the ALJ's disability determination should be different.

**B.    Plaintiff's Credibility**

Plaintiff next contends the ALJ erred by failing to properly consider or reject her testimony regarding her symptoms.  ECF No. 18 at 8-10.  Plaintiff specifically asserts the frequency of the seizures she described was improperly discredited by the ALJ.  ECF No. 24 at 3.

It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and

convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. Tr. 28.

As indicated by the ALJ, Plaintiff provided inconsistent statements regarding matters related to her disability claim. Tr. 28. Inconsistencies in a disability claimant's testimony support a decision by the ALJ that a claimant lacks credibility with respect to her claim of disabling pain. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986). The ALJ noted that the first treatment notes in the record are from September 2009, Tr. 297, and in October 2009 Plaintiff indicated her medications initially worked fairly well, Tr. 425. As the ALJ pointed out, these reports suggest Plaintiff's impairments did not limit her functioning significantly until October 2009, more than one year after she claims disability, July 9, 2008. Tr. 28.

The ALJ also noted Plaintiff had been inconsistent in reporting the frequency of her symptoms. Tr. 28. In January 2010, she reported 12 seizures since her October visit, Tr. 427; on April 22, 2010, she reported having had six seizures for the year, Tr. 253; on May 5, 2010, no breakthrough seizures were indicated, Tr. 296; on August 4, 2010, Plaintiff reported having seizures at least three times per month, Tr. 179; on September 29, 2010, she reported having had six breakthrough seizures in three months, Tr. 359; on October 28, 2010, she reporting have seizures at least four to six times a month, Tr. 214; on October 29, 2010, she reported having four seizures just that week, Tr. 376; and in March 2011,

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

she reported experiencing 10 seizures per month, Tr. 229. Plaintiff testified at the administrative hearing on September 9, 2011, that from 2008 until the time of the hearing she had seizures up to five or six times a month. Tr. 57. The ALJ appropriately considered Plaintiff's inconsistent statements to discount her subjective complaints.

The ALJ further noted inconsistencies between Plaintiff's complaints of certain ailments and the medical evidence of record to support those allegations. Tr. 28. A lack of supporting objective medical evidence is a factor which may be considered in evaluating a claimant's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991). The ALJ noted that while Plaintiff testified to significant difficulties sitting due to a fractured tailbone, Tr. 72, the record reflects she failed to mention this alleged impairment to her treatment providers and rarely made any complaints of back pain. Tr. 28. Plaintiff additionally testified she has significant limitations from frequent headaches, Tr. 66, 73; however, the frequency and intensity of her alleged headaches are not reflected in the record, and she rarely complained of headaches except for having them following a seizure. Tr. 28. It was appropriate for the ALJ to conclude that the objective medical evidence did not support various allegations made by Plaintiff.

The ALJ also noted Plaintiff's activities were inconsistent with her alleged limitations. Tr. 29. It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ indicated that although Plaintiff reported on August 10, 2010, that she does not drive and merely stays at home, Tr. 195, she has also reported she drives herself to the grocery store one time per week and is able to shop independently, Tr. 332. Tr. 29. She reported on August 10, 2010, that she was able to do multiple household chores such as laundry, dishes, vacuuming, mopping and dusting. Tr. 29, 196. Plaintiff also indicated in August 2010 that she was

ORDER GRANTING DEFENDANT'S MOTION . . . - 11

doing yard work and riding horses as daily activities.  Tr. 29, 332.  In October 2010, she was able to fly to California, Tr. 365, and in September 2010 she reported vigorously painting, Tr. 399.  Tr. 29.  This level of activity is not consistent with Plaintiff's claim of total disability.

The ALJ additionally noted there have been periods of time Plaintiff has failed to follow recommendations made by her doctors and has not taken her medication as prescribed.  Tr. 28-29.  Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints.  20 C.F.R. §§ 404.1530, 426.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  The ALJ states Plaintiff was referred to counseling in January 2010, Tr. 428, but there is no evidence she sought mental health treatment until February 2011, Tr. 445.  Tr. 28. In August and September 2010, Plaintiff admitted to being noncompliant with medical advice by not wearing her shoulder immobilizer after shoulder surgery.  Tr. 29, 397-398.  The ALJ also indicated treatment providers questioned what medications Plaintiff was actually taking due to her drug screen being negative for benzodiazepines in September 2009, despite her report she was taking Klonopin, Tr. 298, and her toxicology screen being negative for opiates and benzodiazepines in March 2010, even though she was prescribed those drugs, Tr. 291.  Tr. 28.  In August 2010, following an emergency room visit after having a seizure, Plaintiff admitted she had not taken her medications that day.  Tr. 29, 305.  The fact that Plaintiff failed to follow the recommendations of her treatment providers and failed to take her medications as prescribed discounts her claim of disabling symptoms.

Lastly, the ALJ indicated Plaintiff has admitted to prescription drug abuse, which she downplayed at the administrative hearing.  Tr. 29.  An ALJ may properly consider evidence of a claimant's drug use and drug-seeking behavior in assessing credibility.  *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001). Plaintiff testified at the administrative hearing she had taken Soma, a muscle

ORDER GRANTING DEFENDANT'S MOTION . . . - 12

relaxer, at one time, but had been taking more of the drug than she was supposed to take.  Tr. 69-70.  She indicated she stopped taking the muscle relaxer five months prior to the administrative hearing and had since ceased all medications.  Tr. 70, 74.  However, as noted by the ALJ, the record shows on April 19, 2011, Plaintiff admitted to a history of longstanding Soma abuse that "she had hidden from everyone for years."  Tr. 29, 437.  Plaintiff indicated on April 19, 2011, she had recently obtained 180 Soma 350 mg tablets and had consumed them all in less than five days.  Tr. 437.  It was noted that her significant other had confronted her about the drug abuse and she had decided to get help.  Tr. 437.  On July 15, 2011, it was reported that Plaintiff was in the process of getting into a chemical dependency program related to Soma and benzodiazepine abuse.  Tr. 29, 439.  As indicated by the ALJ, there is no evidence Plaintiff ever entered a chemical dependency program.  Tr. 29.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  *Richardson*, 402 U.S. at 400.  The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review.  42 U.S.C. § 405(g).  After reviewing the record, the undersigned finds the reasons provided by the ALJ for discounting Plaintiff's subjective complaints are clear, convincing, and fully supported by the record.  Accordingly, the ALJ did not err by concluding Plaintiff's subjective complaints regarding the extent of her symptoms and limitations were not entirely credible in this case.

## C.   Shoulder Impairment

Plaintiff provides a cursory argument that since the ALJ accepted Plaintiff's shoulder injury, the vocational expert's testimony that a difficulty using her right

arm would prevent gainful employment should have been credited to support a finding that Plaintiff was disabled.  ECF No. 18 at 10.

First, the vocational expert did not testify that a difficulty using her right arm would prevent Plaintiff from engaging in all gainful employment as Plaintiff alleges.  The vocational expert actually testified that if Plaintiff could only use her right arm for a couple minutes before needing to rest, it would eliminate the document preparer job from consideration.  Tr. 83-84.

In any event, the ALJ determined at step two that Plaintiff had the severe impairment of right shoulder degenerative joint disease and calcific tendonitis of the rotator cuff and tear, Tr. 23, and accounted for Plaintiff's severe shoulder impairment by limiting her to light exertion level work with the added limitation of Plaintiff being able to only occasionally push/pull and reach overhead with her right upper extremity, Tr. 26.  Plaintiff does not challenge these determinations by the ALJ.  ECF No. 18.

When given a hypothetical that included these limitations, as well as other limitations consistent with the ALJ's RFC determination, the vocational expert concluded there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the jobs of housekeeper or cleaner, laundry worker and document preparer.  Tr. 78-81.  Considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert, the ALJ concluded Plaintiff was not disabled within the meaning of the Social Security Act.  Tr. 31-32.  The ALJ's determination is supported by substantial evidence and free of legal error.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of legal error.  Accordingly, **IT IS ORDERED:**

ORDER GRANTING DEFENDANT'S MOTION . . . - 14

1        1.      Defendant's Motion for Summary Judgment, **ECF No. 23**, is

2   **GRANTED**.

3        2.      Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

4        The District Court Executive is directed to file this Order and provide a copy

5   to counsel for Plaintiff and Defendant.  Judgment shall be entered for Defendant

6   and the file shall be **CLOSED**.

7        DATED June 18, 2014.

8



9        _____

10                     JOHN T. RODGERS

                  UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28